**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**NEWNAN DIVISION**

| | | |
|---|---|---|
| WILLIE JAMES PYE, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | No. ____________ |
| | ) | |
| | ) | |
| TYRONE OLIVER, Commissioner, Georgia Department of Corrections, | ) | **CAPITAL CASE** |
| | ) | **ACTIVE EXECUTION WARRANT** |
| CHRISTOPHER CARR, in his official capacity as the Attorney General of the State of Georgia, | ) | |
| | ) | |
| STATE BOARD OF PARDONS AND PAROLES, | ) | |
| | ) | |
| SHAWN EMMONS, Warden, Georgia Diagnostic & Classification Prison | ) | |
| | ) | |
| Defendants. | ) | |

**MOTION FOR TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION PREVENTING PLAINTIFF'S EXECUTION**

Plaintiff Willie James Pye, a Georgia prisoner under sentence of death, respectfully requests that this Court issue a temporary restraining

order or a preliminary injunction that prevents Defendants from carrying out his pending execution. As Mr. Pye detailed in his Complaint filed simultaneously with this Motion, every single execution-eligible prisoner on Georgia's death row has received a guarantee that Defendants will not seek an execution warrant until they can satisfy the baseline conditions necessary to ensure adequate representation in clemency proceedings. Mr. Pye alone—even though he is identically situated in all relevant respects—has not been afforded those protections. That arbitrary and flagrantly disparate treatment as to a matter of life and death is plainly in violation of Mr. Pye's rights under the Fifth and Fourteenth Amendments to the United States Constitution.

And make no mistake, this constitutional violation *matters*. The conditions for resuming executions included in the Agreement, *infra*, were not selected at random. They were chosen, by the State, to account for the specific concerns identified by the capital defense bar in early 2021. As the Supreme Court of Georgia recognized, the "restrictions necessitated by COVID-19 … impaired counsel's ability to meet with their clients and conduct investigations in order to prepare for clemency proceedings *and adequately represent their clients*." *State v. Fed. Def. Program, Inc.*, 315 Ga. 319,

320 (2022) (emphasis added). And while the pandemic itself has largely, and thankfully, faded from view, the significant constraints on counsel occasioned by the pandemic have not. Indeed, legal visitation for death row prisoners in Georgia today remains far more restrictive than it was pre-pandemic. And it is under these circumstances which Defendants—notwithstanding the fact that the conditions in the Agreement remain, undeniably, unsatisfied—pursued and obtained an execution warrant for Mr. Pye. Precisely what the Agreement was intended to avoid.

To be entitled to a temporary restraining order, Mr. Pye must demonstrate (1) a substantial likelihood of success on the merits of his § 1983 challenge; (2) that irreparable injury will be suffered unless the temporary restraining order is granted; (3) that the threatened injury to him outweighs the harm to the Defendants if the Court issues a temporary restraining order; and (4) that the temporary restraining order will serve the public interest. *See Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005). Mr. Pye can satisfy this standard.

## I. Mr. Pye is likely to succeed on the merits.

Mr. Pye is likely to prevail on the merits of his Equal Protection and Due Process claims. As detailed in his Complaint, in April 2021, the State

entered into a written agreement (the "Agreement") with, *inter alia*, the Federal Defender Program, Inc. ("the Federal Defender") regarding the resumption of executions in Georgia following the COVID-19 pandemic. The intent of the Agreement was to preserve effective lawyer-client engagement and attorney representation during the frantic time period associated with execution proceedings. In furtherance of those goals, the Agreement specified three conditions that must occur prior to the resumption of executions:

a. "the final COVID-19 judicial emergency order entered by the Chief Justice of the Supreme Court of Georgia expires;"

b. "the Georgia Department of Corrections lifts its suspension of legal visitation, and normal visitation resumes;" and

c. "a vaccination against COVID19 is readily available to all members of the public."

*Fed. Defender Program, Inc.*, 315 Ga. at 321. The Agreement further provided that the Attorney General would "not pursue an execution warrant of any prisoner … before a total of at least six months after the time the above-three conditions are met." *Id.*

One year later, the State attempted to move forward with the execution of Virgil Presnell—one of the prisoners Defendants now concede was explicitly protected by the Agreement—notwithstanding the fact that neither the second nor third condition of the Agreement had been satisfied and without providing the agreed-upon notice. Following an emergency hearing in the Superior Court of Fulton County, the trial court concluded that Mr. Presnell and his counsel the Federal Defender had a substantial likelihood of success on the merits of their breach-of-contract claim and issued an interlocutory injunction stopping Mr. Presnell's execution. On appeal, the Supreme Court of Georgia unanimously affirmed. *State v. Fed. Def. Program, Inc.*, 315 Ga. 319 (2022).

Defendants now agree that the State cannot execute a certain class of death row prisoners until the conditions in the Agreement, which guarantee death row prisoners adequate representation in their clemency proceedings, have been satisfied. Nevertheless, Defendants sought and obtained a warrant for the execution of Willie Pye *before* those conditions were met and without any notice provided to his counsel.

The Equal Protection and Due Process Clauses are meant to guarantee that the State will treat similarly situated individuals in a similar

and fair manner. Here, in a matter of life or death, Defendants have singled Mr. Pye out for disfavored treatment. That arbitrary and disparate treatment, implicating the most fundamental and sacred right protected in the Bill of Rights, is plainly violative of the Constitution. Accordingly, Mr. Pye has shown that there is a substantial likelihood that he will prevail on his Equal Protection and Due Process claims.

## II. Mr. Pye will suffer irreparable injury absent an injunction.

If this Court does not grant a stay, Mr. Pye will be executed imminently.[1] This undeniably constitutes irreparable harm. *See, e.g.*, *Wainwright v. Booker*, 473 U.S. 935, 935 n.1 (1985) (Powell, J., concurring) (irreparable harm "is necessarily present in capital cases"); *Evans v. Bennett*, 440 U.S. 1301, 1306 (1979) (Rehnquist, C.J.) (granting a stay of execution and noting the "obviously irreversible nature of the death penalty").

But Mr. Pye will also be permanently deprived of his opportunity to make a clemency presentation before the State Board of Pardons and Paroles with unimpaired counsel. Preparing for clemency is a substantial

---

[1] On February 29, 2024, Defendants obtained an execution order directing that Mr. Pye's execution be carried out between noon on March 20, 2024, and noon on March 27, 2024. Defendants set Mr. Pye's execution for March 20, 2024 at 7:00 p.m.

undertaking, which requires collecting considerable evidence and preparing many witnesses, all of whom need to be available to testify at the proceedings. Doing so is especially difficult without notice and while significant visitation restrictions remain in place. Defendants' actions here threaten the strength and completeness of the evidence Mr. Pye may present at his clemency proceedings. And the risk of an incomplete presentation at clemency is, to put it bluntly, death.

**III. The balance of harms weighs in Mr. Pye's favor.**

The third factor, whether the threatened injury to Mr. Pye outweighs any harm to the Defendants if the injunction issues (*i.e.* the balancing of harms), weighs heavily in favor of Mr. Pye. Although Defendants have a strong interest in the enforcement of the State's judgments, they cannot possibly have an interest in executing a condemned prisoner in violation of the Constitution. *See In re Holladay*, 331 F.3d 1169, 1177 (11th Cir. 2003) ("[W]e perceive no substantial harm that will flow to the State [] or its citizens from postponing petitioner's execution to determine whether that execution would violate the Eighth Amendment."). Likewise, the public interest "has never been and could never be served by rushing to judgment at the expense of a condemned inmate's constitutional rights." *In re Ohio*

*Execution Protocol Litig.*, 840 F. Supp. 2d 1044, 1059 (S.D. Ohio 2012). There are," of course, "higher values than ensuring that executions run on time." *Bucklew v. Precythe*, 139 S. Ct. 1112, 1148 (2019) (Sotomayor, J., dissenting).

Significantly, moreover, there are no issues of delay or diligence on the part of Mr. Pye. Indeed, *Defendants'* conduct is the reason Mr. Pye requires an emergency injunction to stay alive.

Over the last few months, the Attorney General's office has been engaged in ongoing discussions involving, *inter alia*, counsel for the Federal Defender and counsel for Mr. Pye concerning a possible resolution to the ongoing contract litigation in the Superior Court of Fulton County. It was only on February 27, 2024, that counsel for the Attorney General informed counsel for the Federal Defender that further settlement negotiations were not worthwhile and separately, that the State would not continue discussions over the possibility of Mr. Pye benefiting from a potential resolution. On February 29, *two days later*, and without any notice to counsel, Defendants obtained an execution warrant for Mr. Pye, with a scheduled execution date less than three weeks out. Mr. Pye, in other words, has filed the instant action mere days after learning that the State would single him out for execution notwithstanding the State's recognition

that *other* death row prisoners could not be executed until the conditions allowing for their adequate representation in clemency proceedings had been satisfied. Clearly, then, Mr. Pye has not "delayed unnecessarily in bringing th[is] claim." *Nelson v. Campbell*, 541 U.S. 637, 650 (2004).

**IV. The requested relief will serve the public interest.**

The public always has a strong interest in ensuring that government officials act within the parameters of the United States Constitution, *see, e.g.*, *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1327 (11th Cir. 2019) ("[T]he public interest is served when constitutional rights are protected."), but that is particularly true when a State carries out judicial executions, its most solemn duty. Given the gravity of an execution, ensuring that Defendants treat similarly situated death row prisoners the same, and not arbitrarily choose which prisoners can be executed before the guarantees of adequate representation are in place, is clearly in the public interest.

FOR THE FOREGOING REASONS, Plaintiff Willie James Pye respectfully requests that this Court issue a temporary restraining order or preliminary injunction enjoining Defendants from taking any action to advance proceedings on his execution warrant until the conditions

allowing for adequate representation of prisoners in clemency proceedings, as specified in the Agreement, have been satisfied.

This, the 11th day of March, 2024.

Respectfully submitted,

*/s/ Nathan Potek*

Nathan A. Potek (Ga. 747921)
Federal Defender Program Inc.
101 Marietta Street, NW
Suite 1500
Atlanta, GA 30303
(404) 688-7530

COUNSEL FOR MR. PYE

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing pleading was served upon counsel for Defendants via electronic mail at sgraham@law.ga.gov.

Dated this the 11th day of March, 2024.

*/s/ Nathan Potek*